## Fletcher v. Lippert's Guardian.

(Decided Nov. 28, 1933.)

470

E. L. STEPHENS and GLENN H. STEPHENS for appellant.

TYE, SILER, GILLIS & SILER for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This action involves the right of a statutory guardian to the custody of the ward, under section 2032, Kentucky Statutes, as against that of a grandmother, under the facts set forth in the pleadings of the parties.

Peter Charles Lippert and Grace Fletcher Lippert were husband and wife residing in Jefferson county, Ky., in December, 1928, when their child, Theresa Catherine Lippert, was born. In June, 1929, its father died, leaving it and the mother surviving. Immediately the mother appeared in the county court of Jefferson county and sought the appointment of a guardian of Theresa Catherine Lippert. The county court, with her consent, appointed Ben J. Johnson who, at that time, was public administrator and guardian of Jefferson county, guardian for her infant daughter, at the time, about six months old. The mother, with the child, immediately went to Corbin, Ky., the home of Pearl Fletcher who was the mother of Grace Fletcher Lippert, and, of course, the grandmother of the infant, where they remained until the mother's death.

Grace Fletcher Lippert was in bad health at the time she returned to the home of her mother and continued in bad health until her death May 6, 1930, about eleven months after the death of her husband.

The guardian of Theresa Catherine Lippert filed this action in the Whitley circuit court, the county in which the grandmother and his infant ward reside, and

in which they have resided continuously since the death of Grace Fletcher Lippert, charging that as statutory guardian he was entitled to the custody and control of the infant "in order that he may place her with relatives of her father, who are ready, able and willing, at their own expense, to furnish the infant a good home, provide her with a good education, good surroundings and good influences," for the betterment of "her physical, mental and spiritual welfare," and "so that her estate may be preserved and protected," and "as her guardian he may properly perform his duties" and "exercise the proper oversight and supervision over her welfare."

In her answer, the grandmother set up her qualifications as guardian of the infant under the order of Whitley county court. Also the fact that the mother of the infant had requested her to take, keep, care for and rear the infant as long as she lived; that the mother had two other children by a former marriage, Borden Thompson, 11 years old, and Bobbie Thompson, 8 years old, who reside with her, and were being reared by her with their half-sister, Theresa Catherine Lippert. She charged that the relatives into whose care Johnson desired to place the ward were nonresidents of the state of Kentucky, and that he had no intention of taking charge of and caring for the ward.

At the time this action was instituted, Theresa Catherine Lippert was five years old, and, with her half-brothers, had continuously resided with them at her grandmother's home where she had given them that character of care, attention, and service a good grandmother generally gives to her orphan grandchildren. Great devotion exists between the grandmother and the three infants. These facts are set out in the amended answer.

The trial court sustained a demurrer to it. She declining to plead further, judgment was entered, awarding Johnson, as statutory guardian, the custody and control of the infant, with the requirement that the grandmother surrender and deliver her to him, of which she complains on this appeal.

The trial court was technically correct in its conclusion that under section 2032, the statutory guardian shall have "the custody of his ward." But even so, a

court of equity has power to determine the right of actual control and custody of an infant in the legal custody of the guardian. Bishop v. Bishop, 238 Ky. 702, 38 S. W. (2d) 657. The statute deals solely with the legal custody of the ward for the purpose of providing it with the necessary and proper maintenance and education out of its estate in his hands. It is the intendment of the statute to commit the custody of the ward, personally, to the guardian, if he is a fit person, and it does not appear that the best interest of the ward requires the actual custody be intrusted to another. Fitzpatrick's Guardian v. Baker, 227 Ky. 788, 14 S. W. (2d) 181. Equity will place the custody of the infant ward where its future welfare demands. Chance v. Pigneguy, 212 Ky. 430, 279 S. W. 640. And in determining who shall have the custody of the infant, its welfare is of paramount concern. Equity always has in view the welfare of a child of tender years in decreeing its custody to one claimant against another. The breaking up of an established, beneficial, and natural relationship, where same exists, is an important factor to be considered in determining the right to its custody. Cummins v. Bird, 230 Ky. 296, 19 S. W. (2d) 959. The right of custody must be determined by the facts and circumstances of each particular case. Moore v. Smith, 228 Ky. 286, 14 S. W. (2d) 1072. The fact that the deceased mother, during her lifetime, had intrusted the rearing of her other two infant children to their grandmother, and sought and obtained the grandmother's consent to assume in like manner the control and custody of her infant daughter, indicates a positive expression of the interest of the mother in her children and a desire to have, and also a willingness to trust, their grandmother to rear them together. This is a potent fact, not to be lightly regarded.

In Proctor v. Rhoads, 4 Ky. Law Rep. 453, a father, upon the death of his wife and in compliance with her dying request, carried their only child, a delicate little girl, two and a half years old, to the home of the maternal grandparents for them "to raise." He married the second time, more than three years after he had parted with the custody of his daughter, but continued to manifest an affection for her, and interest in her welfare. He, as well as the grandparents, were fitted for the trust of rearing it. During the three years it re-

mained at the home of its maternal grandparents it became attached to them and they to it. It was held that the custody of the child was properly awarded to the grandparents.

In Smith v. Martin, 4 Ky. Law Rep. 734, on separation of the father and mother, the mother surrendered the custody of an eighteen months male child to Martin, who nurtured it for seven years. When the father endeavored to regain custody of the child, adhering to the rule that the "best interest of the child determines the right to its custody," we allowed the custody to remain with Martin. Stapleton v. Poynter, 111 Ky. 264, 62 S. W. 730, 23 Ky. Law Rep. 76, 53 L. R. A. 784, 98 Am. St. Rep. 411; Bedford v. Hamilton, 153 Ky. 429, 155 S. W. 1128; Mason v. Williams, 165 Ky. 331, 176 S. W. 1171; Edleson v. Edleson, 179 Ky. 300, 200 S. W. 625, 2 A. L. R. 689; Workman v. Workman, 191 Ky. 124, 229 S. W. 379; Vanover v. Johnson, 201 Ky. 302, 256 S. W. 422; Scott v. Kirkpatrick, 205 Ky. 700, 266 S. W. 390; Smart's Ex'x v. Bree, 211 Ky. 335, 277 S. W. 478.

In Workman v. Workman it was said that no consideration short of a statutory inhibition would interfere with the power of a chancellor to adjudge the custody of an infant to whomsoever it might appear the welfare and happiness of the infant demanded, whether that person be a resident or nonresident of the state. In Smart's Ex'x v. Bree, it was our conclusion that a chancellor may make different disposition of children to others than even their parents, if their best interest and welfare demand such disposition. Adhering to these general principles and viewing the allegations of the answer as amended which are admitted to be true by the demurrer, we are constrained to declare that on the facts stated in the answer as amended, the grandmother is entitled to the control and custody of the ward subject to the duty of the guardian to maintain and educate it.

Judgment reversed for proceedings consistent with this opinion.